**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


**TANYA MARIE McCLENDON,**

        **Plaintiff,**

**v.**                                    **Case No. 8:14-cv-1651-T-23TBM**

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/


## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. Because the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, I recommend that it be reversed and remanded for further proceedings.

**I.**

Plaintiff applied for disability benefits and Supplemental Security Income in December 2010 and January 2011, respectively, alleging disability as of September 27, 2010, by reason of lower back, hip, and leg injury. (R. 134-41, 162). Plaintiff's applications were denied originally and on reconsideration.

Plaintiff next received a *de novo* hearing before an Administrative Law Judge ("ALJ") on October 11, 2012. (R. 35-61). She was thirty-eight years of age at the time of her

administrative hearing.  She stands 5 feet tall and weighed 158 pounds.  Plaintiff has a high school education in the exceptional student education ("ESE") program and reported past relevant work as a school custodian.  She was represented at the hearing by counsel and testified in her own behalf.  Plaintiff testified that she last worked in September 2010 when she was involved in an automobile accident.  In short, Plaintiff claims she was left unable to work due to injuries she sustained in the accident.

As Plaintiff describes her injuries, she sustained neck and back problems including a bulging disc, two herniated discs, and nerve damage to her arms and legs.  She can stand for thirty minutes before needing to sit down.  She experiences tingling and sharp pain in her legs if she stands too long.  She rates the pain at a level ten, the highest level.  She can sit for twenty minutes then needs to get up because of pain and swelling in her neck and back.  Kneeling, crouching, and bending over aggravate her lower back.  She is unsure how far she can walk.  She has to use a riding cart at the grocery store.  She sometimes has problems with her balance.  She can lift five to ten pounds.  She also has problems using her arms for holding things for more than twenty minutes – she gets sharp pain and swelling in her arms and shoulder.  She rubs it and takes Tylenol for relief.

Plaintiff was in ESE classes through the twelfth grade and received a special diploma.  She doesn't read well; she has her husband read to her.  She has trouble remembering things.  At home, she stopped cooking and cleaning after the accident because of her back, but she tries to do things to help out and she can put things in the oven.  She spends her day lounging around or elevating her legs, but she gets up and moves around to keep from getting too stiff.  She sleeps five to six hours at night and she is tired all the time.

2

She watches television, but can't stay focused.  She drives short distances.  If she drives longer distances, she gets pains down her legs to her toes.  She goes to church every other Sunday, but has problems sitting through the sermon.  She attends parent-teacher meetings with her daughter.  She denies side effects of her medication.  (R. 38-53).

Irvin Roth, a vocational expert ("VE"), testified that Plaintiff's past work as a school janitor was a medium exertional job with an SVP of 3.[1]  On a hypothetical question assuming an individual of Plaintiff's age, education, and work experience, capable of light exertional work with only occasional climbing, stooping, and crouching, with the need to avoid hazardous machinery and unprotected heights, and limited to frequent reaching, handling, fingering, and feeling, the VE opined that such person could not do Plaintiff's past work but could perform jobs such as cashier, small parts assembler, and cleaner/housekeeping.  If such person was reading and writing at a first grade level and doing math at a third grade level and would take one and one-half the time to complete simple tasks that it would take another worker, the VE opined such person would have great difficulty maintaining employment due to such productivity.  (R. 54-60).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

---

[1]SVP refers to the Dictionary of Occupational Titles term "Specific Vocational Preparation" and refers to the length of time it takes to learn a job.  Dictionary of Occupational Titles, Appendix C: Components of the Definition Trailer, § II, SVP (4th Ed., Rev. 1991).  An SVP of 3 means "[o]ver 1 month up to and including 3 months."  An SVP of 3 corresponds to "semi-skilled" rather than "unskilled" work.  *See* Social Security Ruling ("SSR") 00-4P (S.S.A. Dec. 4, 2000).

By his decision of November 26, 2012, the ALJ found that Plaintiff has severe impairments related to degenerative disc disease in the cervical, thoracic, and lumbar spine, but her learning disorder and borderline intellectual functioning were not severe impairments. (R. 22-24).  On that finding, the ALJ determined that Plaintiff had the residual functional capacity to perform a limited range of light exertional work.  (R. 24-28).  Upon this determination and the VE's testimony, the ALJ concluded that Plaintiff could perform jobs available in the local and national economy.  (R. 28-29).  On this conclusion, Plaintiff was determined to be not disabled.  (R. 29).  The Appeals Council denied Plaintiff's request for review (R. 1-7), and the ALJ's decision became the final decision of the Commissioner.

## II.

### A.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months.…"  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable person would

4

accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

## B.

The Social Security Regulations set forth a five-step sequential evaluation process the ALJ must follow in determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1).  Under this five-step sequential evaluation, the ALJ

considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the severe impairment meets or equals an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's age, education and work experience, the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at §§ 404.1520(a)(4), 416.920(a)(4).

The Listing of Impairments in the Social Security Regulations identifies impairments which are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  By meeting a listed impairment or otherwise establishing an equivalence, a claimant is presumptively determined to be disabled regardless of her age, education, or work experience.  Thus, an ALJ's sequential evaluation of a claim ends if the claimant can establish the existence of a listed impairment.  *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).  However, at this stage of the evaluation process, the burden is on the claimant to prove that she is disabled.  *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

At issue in this case is Listing 12.05, which sets forth a two-part inquiry for determining intellectual disability.[2]  20 C.F.R. Pt. 404, Subpt. P, App. I § 12.05.  The first

---

[2]On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability."  *See Hickel v. Comm'r of Soc. Sec.*, 539 Fed. App'x 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. Pt. 404, Subpt. P, App. 1)).  The term "intellectual disability" is used throughout this report.

requires the claimant to satisfy the diagnostic description of intellectual disability in the introductory section of Listing 12.05, which requires a showing of: "(1) significantly subaverage general intellectual functioning (2) with deficits in adaptive functioning (3) initially manifested during the developmental period: i.e.… before age 22." *Id.* The second requires the claimant to show the required severity level of the impairment, which is accomplished by satisfying one of four subsections under Listing 12.05. *Id.* at (A)-(D).

A valid IQ score of sixty to seventy after age twenty-two creates a presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The presumption can be rebutted, however, when the IQ score is inconsistent with the other medical evidence and the claimant's daily activities and behavior.[3] *See Henry v. Barnhart*, 156 Fed. App'x 171, 173 (11th Cir. 2005)[4] (citing *Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986)). Accordingly, the ALJ must determine whether there is sufficient evidence to rebut the presumption.[5] *See Grant v. Astrue*, 255 Fed. App'x 374, 375 (11th Cir. 2007). If a claimant presents a valid IQ score that meets the requirements of Listing 12.05C and the ALJ fails to

---

[3]"To rebut a presumption of intellectual disability under Listing 12.05C, courts require evidence of adaptive functioning that is 'significantly inconsistent with the IQ score.' The mere 'ability to do simple daily activities and simple jobs is not enough.'" *Harrell v. Colvin*, No.-14-cv-20513, 2015 WL 574006, at *6 (S.D. Fla. Feb. 11, 2015) (quoting *Monroe v. Astrue*, 726 F.Supp.2d 1349, 1355 (N.D. Fla. 2010)).

[4]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

[5]"The cases examining a disability claimant's adaptive functioning in the context of a 12.05C listing and I.Q. score are highly fact dependant, and, as a result, the outcomes vary." *Willis v. Astrue*, No. 5:12cv64/RS/CJK, 2012 WL 6725605, at *12 (N.D. Fla. Nov. 26, 2012) (citations omitted).

recognize the presumption, the ALJ commits reversible error.[6]  *Hodges*, 276 F.3d at 1268-69.

## III.

Plaintiff raises two claims on this appeal.  As she phrases the issues: the ALJ failed to properly analyze her learning disorder under the requirements of Listing 12.05C, and, in the alternative, the ALJ erred at step five of the sequential evaluation process by not including any mental limitations in his assessment of Plaintiff's residual functional capacity ("RFC").  Certain elements of both claims have merit and thus are addressed accordingly.

## A.

By her first claim, Plaintiff argues that her learning impairment satisfies the requirements of Listing 12.05C because she has severe physical impairments of the spine, her school records show she had an intellectual disability prior to age twenty-two, and she has a valid IQ score of sixty-three.  Here, the decision does not reflect the ALJ's consideration of this listing, its particular requirements, or the combined effect of her learning disorder and spine problems.  Concerning her IQ score, Plaintiff cites the psychological evaluation performed by Robert Stephenson, Psy. D., a one-time examining neuropsychologist.  (R. 704-08).  According to this testing, Plaintiff had a valid verbal IQ score of sixty-three and full scale score of sixty-seven.  She urges that the ALJ failed to discuss the IQ score at step three and improperly discounted it elsewhere in the decision by relying on her "great work history" and "impressive adaptation in the home environment."  According to Plaintiff, her valid IQ

---

[6]This departs from the general rule that an ALJ's finding that a claimant's condition did not meet that of a specific listed impairment be implied from the record.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

score is consistent with her work history and daily living activities.  She argues that her

ability to work for many years as a school custodian for a single employer *prior to* developing

severe physical impairments is irrelevant under the applicable listing and Dr. Stephenson

opined that it was not inconsistent with her cognitive ability.  Additionally, Plaintiff contends

her past work did not require technical knowledge or skills and the ALJ stated it was

unnecessary to question her about the details of her work at the hearing.  As for her purported

adaptation at home, such was not explained adequately by the ALJ and a number of reports

suggest that she had limitations at home as well.  In any event, she urges that limited activities

of daily living do not preclude a finding under the listing because case law requires adaptive

functioning to be "significantly inconsistent" with the IQ score to disprove Listing 12.05C,

and hers were not.  In sum, Plaintiff maintains that her severe cervical, thoracic, and lumbar

impairments coupled with her IQ score of sixty-three meet the requirements of Listing 12.05C.

Accordingly, she argues the decision is unsupported by substantial evidence.  (Doc. 17 at 8-

17).

      The Commissioner responds that while Plaintiff has a physical impairment imposing

significant work-related limitations and the evidence contains IQ scores between sixty and

seventy and learning difficulties prior to age twenty-two, Plaintiff does not meet not Listing

12.05C because she is unable to show she had the required deficits in adaptive functioning

given her school records, daily activities, and work history.  Her school records reveal that

Plaintiff earned good grades, worked hard, got along with students and teachers, was

responsible and interacted well with others, and obtained IQ scores above seventy when

tested in sixth grade.  While Dr. Stephenson found Plaintiff had deficits in adaptive

9

functioning, the ALJ rejected that finding due to Plaintiff's daily activities, which demonstrated she could walk without an assistive device, drive, cook meals, do light housekeeping, shower and groom herself, and care for her twelve year old daughter. As for her work history, the Commissioner urges the VE correctly identified the skill level of Plaintiff's past work and a lengthy work history undercuts the claim of deficits in adaptive functioning. Finally, although Plaintiff claims it is unclear whether the ALJ considered Listing 12.05C, the Commissioner urges that the ALJ impliedly found that she did not meet Listing 12.05C given his general finding that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments. In any event, the Commissioner asserts that the ALJ was not required to address Listing 12.05C because he specifically found that Plaintiff's mental impairments were nonsevere. (Doc. 18 at 4-9).

By her second claim, Plaintiff argues in the alternative that her learning disorder and borderline intellectual functioning significantly limit her ability to work and thus the ALJ should have included mental limitations in her RFC and the hypothetical questions posed to the VE. She again cites to Dr. Stephenson's psychological evaluation that indicated she would have difficulty in vocations requiring more than early elementary level skills in reading and math; she will struggle to multi-task or manage complex activities; she'll require ample amounts of repetition and simplification; and she will not do well with novel problem solving or speeded tasks. None of these limitations were included in the RFC or questions to the VE; nor were they properly considered by the ALJ. Plaintiff also argues that the ALJ failed to consider properly Dr. Stephenson's opinions and conclusions. Further, given Plaintiff's less than third grade reading and writing skills, the ALJ should have found her functionally

illiterate (or at least very limited in her ability to read, write, and perform math) and should have made the finding a part of his hypothetical question.  Absent a complete hypothetical to the VE, she urges the ALJ's decision based thereon is not supported by substantial evidence. (Doc. 17 at 17-22).

The Commissioner counters that the ALJ was not required to include Dr. Stephenson's mental limitations in Plaintiff's RFC or the hypothetical questions posed to the VE because the ALJ discussed Dr. Stephenson's report and properly accorded little weight to the opinions and recommendations contained therein.  Further, the ALJ provided the following reasons to support his rejection of Dr. Stephenson's assessment: (1) his diagnoses resulted from a one-time consultation; (2) the results and scores when testing Plaintiff's adaptive functioning were inconsistent with Plaintiff's long work history and her adaptation at home; (3) the language used by the doctor indicated that his opinion was representative of Plaintiff's subjective presentation; and (4) his opinion was not consistent with other evidence and did not seem supported by his examination but instead came from Plaintiff's subjective complaints.  As for Plaintiff's claim of functional illiteracy, she testified that she can do basic reading, writing, and adding and subtracting; she finished high school; she completed her own disability report; and her testimony that she could not read a newspaper was in response to whether her fatigue affected her concentration.  Thus, any argument that she is illiterate is without merit.  In sum, the Commissioner maintains that substantial evidence supports the ALJ's findings and conclusion that Plaintiff was not disabled.  (Doc. 18 at 9-12).

**B.**

Upon request of the Florida Department of Education, Division of Vocational Rehabilitation, Dr. Stephenson evaluated Plaintiff on August 19, 2011, to assess her intellectual status, academic achievement, and adaptive functioning.  (R. 702-09).  Dr. Stephenson reviewed the available records, conducted a clinical interview, and administered the Wechsler Adult Intelligence Scale-Fourth Edition, the Independent Living Scales ("ILS"),[7] and the Woodcock Johnson III Normative Update Tests of Achievement.  He reported that Plaintiff's overall intellectual functioning fell in the impaired range, with a full scale IQ of sixty-seven.  Her nonverbal reasoning abilities were in the borderline range, with a score of sixty-seven, and her verbal reasoning abilities were in the impaired range, with a score of sixty-three.  (R. 706).  With regard to academic achievement, Dr. Stephenson reported that Plaintiff's overall reading skills and writing skills were impaired, with both at a first-grade equivalency, and her overall math skills were impaired, at a third-grade equivalency.  (R. 706).  He opined that Plaintiff's academic skills were consistent with her levels of intelligence.  (R. 707).  As for adaptive functioning, he reported Plaintiff's overall score on the ILS was in the impaired range and her adaptive functional abilities were far below expectations.  (R. 707-08).  Dr. Stephenson stated that the test results were "considered to be a valid indicator of [Plaintiff]'s current psychological functioning."  (R. 706).  He also

---

[7]Dr. Stephenson noted that the ILS measures adaptive functioning, targeting memory/orientation, management of money, management of home and transportation, health and safety issues, and social adjustment.  (R. 707).

stated that Plaintiff presented as a cooperative woman who put forth good effort on the examination, but she is "greatly struggling compared to other adults her age." (R. 707).

Dr. Stephenson diagnosed a learning disorder, not otherwise specified (reading, math, written language), and borderline intellectual functioning.[8] (R. 708). He noted her cognitive abilities and academic skills were, in many respects, "on par with an adult diagnosed with a Mild Mental Retardation." (*Id.*). He opined that Plaintiff's impairments would affect her functioning in several ways: (1) she will have difficulty in jobs requiring more than early elementary level skills in reading and math; (2) she will struggle to multitask or manage complex activities because her reasoning is primarily concrete; (3) her rate of learning will be slower and she'll require ample amounts of repetition and simplification; (4) she will benefit from the use of manipulatives and ample opportunity for slowed presentation of information and rehearsal; and (5) she will not do well with novel problem solving, multitasking, or speeded tasks. (*Id.*).

While Plaintiff's school records also were submitted, including the results of an intelligence test administered when she was in the sixth grade, the ALJ did not specifically discuss them or mention the IQ results.

---

[8]He also reported that Plaintiff's current levels did not suggest the presence of a specific learning disability. Rather, they suggested "a more diffuse picture of development difficulty." (R. 708). And, while her testing levels suggested a diagnosis of an intellectual disability, Dr. Stephenson opined that the overall findings were consistent with a diagnosis of borderline mental retardation. *Id.*

## C.

At step two of the five-step evaluation process, the ALJ determined that Plaintiff's medically determinable impairments of a learning disorder and borderline intellectual functioning, considered alone and in combination, did not cause more than minimal limitation on Plaintiff's ability to perform basic mental work activities and therefore did not constitute severe impairments.[9]  In explaining this conclusion, the ALJ made the following statements pertinent to both the severity finding and the assessment by Dr. Stephenson:

> Initially, the undersigned notes the claimant has received no mental health treatment at all.  The [diagnoses of learning disorder NOS and borderline intellectual functioning] were the result of a onetime consultation with the claimant over a period of a couple of hours (Exhibit 14F).  Moreover, while the claimant's academic records were consistent with her testimony regarding her placement in the exceptional education program, her grades were fairly good and she graduated (Exhibit 16E).  Accordingly, the results and recommendations derived from the consultation were given little weight (Exhibit 14F).
>
> What was particularly questionable regarding the results of the vocational rehabilitation exam in this case was the claimant's score on adaptive functioning, which was clearly not representative of her great work history and impressive adaption in the home environment.  From the language used in the report, the undersigned can derive that the doctor's opinion was representative of the claimant's subjective representations (Exhibit 14F, p. 7).  Most of the information relied on in the report came from the claimant and the testing administered was

---

[9]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)).  Basic mental work activities include capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and employees; dealing with changes at work; and the use of judgment.  *Id.*

not without subjective influence.  Most importantly, the claimant has never alleged mental health problems during the initial stages of this case and it was not until her attorney at hearing prompted her testimony that mental health issues even arose.  In this case, the claimant's primary allegations arose from her physical problems secondary to a car accident.

\*\*\*

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation.  At hearing, the claimant alleged problems with memory and concentration. First, the undersigned notes that lack of concentration was primarily attributable to her alleged fatigue secondary to pain induced insomnia.  Moreover, as for memory problems, the claimant could not specifically articulate at hearing what problems she was having and how they would affect her ability to perform simple tasks.  While she mentioned inability to handle multi-step instructions when prompted by her attorney at hearing, this is consistent with the jobs provided by the vocational expert for unskilled work later in the decision. Moreover, records indicate she had a very good earnings record as a school custodian, which was classified by the vocational expert in this case as semi-skilled work.  Moreover, although low IQ was discussed by the report of [Dr.  Stephenson], as discussed above, little weight was given to this report in light of her great adaptive functioning and lack of treatment or assistance (Exhibit 14F).

(R. 23-24).

The ALJ concluded by noting that he had considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and concluded that Plaintiff had mild limitation in activities of daily living; mild limitation in social functioning; mild limitation in concentration, persistence or pace; and no episodes of decompensation. Based on these findings, the mental impairments were deemed nonsevere in accordance with the Regulations.  (R. 23-24).

At step three, without mention of any specific listing, the ALJ found that "[t]he claimant's impairments, considered singly or in combination do no approach the level of severity contemplated in any section of the listings." (R. 24). At step four, the ALJ determined that Plaintiff was capable of a limited range of light exertional work but did not have any mental limitations or restrictions. Consequently, the ALJ did not include any mental limitations in the hypothetical questions posed to the VE at step five.

### D.

The ALJ's consideration of Dr. Stephenson's report and opinions is problematic. After thorough consideration of the arguments and governing authority, and while I do not reach any conclusion as to the ultimate decision of the ALJ, I conclude that Plaintiff's case must be reversed and remanded for reconsideration of Dr. Stephenson's report in its entirety.

Initially, I find that the ALJ erred by failing to consider adequately Dr. Stephenson's report. As a statement from a neuropsychologist about the nature and severity of Plaintiff's intellectual impairment and learning disorder, Dr. Stephenson's diagnoses and report were "medical opinions" that the ALJ was required to evaluate carefully. *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Here, because it was the only acceptable psychological source in the record to address Plaintiff's mental impairments, consideration of Dr. Stephenson's opinions takes on heightened significance. Yet, the ALJ did not refer to Dr. Stephenson by name or recognize that the Florida Department of Education, Division of Vocational Rehabilitation, referred Plaintiff to him after it questioned her intellectual status and adaptive functioning in July 2011. Nor does the decision contain a summary of his report. Most significant, however, is the ALJ's failure to discuss the whole of the

16

neuropsychologist's opinions. In particular, the ALJ failed to mention the specific IQ scores reported by Dr. Stephenson or that, if such were valid, Plaintiff was entitled to a presumption that she manifested deficits in adaptive behavior prior to the age of twenty one. If the IQ scores were valid, the ALJ also erred by failing to give Plaintiff the presumption required under *Hodges*.[10]  *See Sheffield v. Comm'r of Soc. Sec.*, 513 Fed. App'x 840, 842-43 (11th Cir. 2013) (holding that ALJ erred at step three by finding there was no medical evidence supporting a conclusion of listing level severity as to any impairment where he failed to mention the intellectual disability listing, the claimant's educational history or current activities, or the argument at hearing that the listing was met); *Grant*, 255 Fed. App'x at 375 (finding ALJ applied an improper legal standard by requiring plaintiff to demonstrate deficits in more than one area of adaptive functioning before the age of twenty-two because she was entitled to benefit of the presumption). The ALJ also failed to address Dr. Stephenson's finding that Plaintiff's reading and writing were at the first grade level and her math skills the third grade level. Nor did the ALJ address that Plaintiff would mildly struggle to complete even simple structured, single-step tasks. The significance here is that when such was characterized as a limitation requiring Plaintiff to take one and a half the amount of time it took other workers to complete simple structured single step tasks, the VE opined that it

---

[10]This raises another problem with the manner in which the ALJ considered Dr. Stephenson's opinions. The ALJ failed to make clear in his decision if he accepted the specific IQ scores that Dr. Stephenson reported. The ALJ's failure to provide a clear statement on the weight afforded the IQ scores assessed by Dr. Stephenson also requires remand. *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (providing that failure to apply the correct legal standards or to provide the reviewing court with a sufficient basis on which to determine that the correct legal principles have been followed or that substantial evidence exists mandates a reversal).

would result in "great difficulty maintaining employment."  Given these omissions, I find that

the ALJ erred by failing to adequately consider the opinions of Dr. Stephenson and remand is

required.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)

(providing that ALJ reversibly erred by failing to discuss pertinent elements of treating and

examining physicians' medical opinions); *but see Dyer v. Barnhart*, 395 F.3d 1206, 1211

(11th Cir. 2005) (providing that "there is no rigid requirement that the ALJ specifically refer

to every piece of evidence in his decision, so long as the ALJ's decision" allows the court "to

conclude that the ALJ considered [Plaintiff's mental] condition as a whole.").[11]

Next, even assuming, *arguendo*, that the ALJ fully and fairly considered the

pertinent parts of Dr. Stephenson's reports and opinions, I conclude that the reasons he

provided for according the same "little weight" are not supported by substantial evidence.[12]

An ALJ must state with particularity the weight given to different medical opinions[13] and the

---

[11]*Dyer* is factually distinguishable and inapposite to the determination in this case.  As observed in *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1305 (M.D. Fla. 2011), "there is a difference in failing to address a pain medication the plaintiff has been prescribed on one occasion (as was the case in *Dyer*) and failing to discuss probative evidence of one of Plaintiff's diagnoses (as is the case here)."

[12]As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).  However, an ALJ can accord more or less weight to a particular source if there is good cause to do so.  *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

[13]"'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'"  *Winschel* at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

reasons therefor.[14]  *See Winschel*, 631 F.3d at 1179.  And, the reasons given by an ALJ for

discounting the opinion of an examining doctor must be supported by substantial evidence.

*See MacGregor v. Bowen*, 786 F.2d 1050, 1053-54 (11th Cir. 1986) (concluding Appeals

Council's rejection of consulting psychologist's opinion was not supported by substantial

evidence); *Hickel*, 539 Fed. App'x at 988-89 (concluding that ALJ's reasons for rejecting

examining psychologist's opinion were not supported by substantial evidence and remanding

for ALJ to reconsider her assessment of the plaintiff's RFC in light of that opinion).

By my consideration, the reasons the ALJ gave for discounting the

neuropsychologist's opinions do not survive scrutiny.  First, Dr. Stephenson's opinion is the

only acceptable medical source evidence of record during the pertinent period.  It is not

contradicted by any other objective opinion evidence, nor does the ALJ state that it is.  While

it is true that Dr. Stephenson was a one-time examiner, that alone is no cause to question his

diagnoses of a learning disorder and borderline intellectual functioning.  Indeed, despite

questioning the diagnoses on that basis, the ALJ credited them as medically determinable

impairments.  The diagnoses are consistent with school records and uncontradicted by any

other evidence.  Next, the lack of mental health treatment appears of little significance in this

case in light of Plaintiff's diagnoses.  The ALJ does not indicate the type of treatment an

individual with those diagnoses should receive.  Plaintiff's educational records support that

---

[14]In determining the weight to give to each medical opinion, including the opinion of an examining psychologist, the ALJ is to consider a number of factors: (1) whether the doctor has examined the claimant; (2) whether the doctor was a treating source; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctors's specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).

she received the benefits of an ESE curriculum through graduation.  She does not claim other mental impairments – only that she is a slow learner who has trouble with memory and concentrating, a claim that is supported by the available evidence.  The fact that she received *some* good grades in ESE classes and graduated with a special diploma is not inconsistent with any of the opinions rendered by the consulting neuropsychologist.  Similarly, Dr. Stephenson's opinions are not necessarily undercut by the fact that Plaintiff enjoyed a lengthy work history as a janitor following graduation and functioned reasonably well inside her home.  Even if they are, the ALJ did not sufficiently explain how.  While the ALJ questioned the adaptive functioning findings by Dr. Stephenson, he did not mention that the same was based on Plaintiff's results on administration of the ILS, which appears an acceptable *objective* testing tool.  As for the ALJ's statement that Plaintiff has never alleged mental health problems during the early stages of her case, she did not undergo the psychological evaluation until after her claims were denied initially and on reconsideration and the results of the evaluation were squarely presented to the ALJ prior to the hearing.  It is disingenuous for the ALJ to contend that issues concerning Plaintiff's intellectual functioning and learning disability were not raised until prompted by counsel at the hearing.  Finally, the ALJ ignores that Dr. Stephenson conducted objective and/or standardized testing and based his opinions on the same.  Even if some of the doctor's opinions were influenced by Plaintiff's subjective report, his cognitive assessment rests primarily on what he observed and upon his objective testing.

For these reasons, this case should be reversed and remanded for further proceedings.  On remand, the ALJ should give full and fair reconsideration to Dr.

20

Stephenson's opinions and the whole of the medical records consistent with this opinion. Further, he should specifically address Listing 12.05C.  Should he again choose to discount a medical opinion, in addition to his subjective conclusion he should demonstrate from the medical or other evidence the factual support for his conclusions.

Because of the impact these issues could have on the others after a reassessment on remand, the remaining issues raised by Plaintiff need not be addressed.[15]  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n. 2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised).

**IV.**

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards, and I recommend that it be **REVERSED** and **REMANDED** for further proceedings before the Commissioner consistent with this Report and Recommendation.  I further recommend that the Clerk be directed to enter Judgment in favor of the Plaintiff and to close the case, and the matter of fees and costs shall be addressed upon further pleadings.

Respectfully submitted this
8th day of July 2015.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

---

[15]It is worth noting, however, that the DOT job number provided by the VE and relied upon by the ALJ for classifying Plaintiff's past work as a school custodian contains significantly different job requirements than those alleged by Plaintiff.

**<u>NOTICE TO PARTIES</u>**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable Steven D. Merryday, United States District Judge
Counsel of Record